UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-24627-ELFENBEIN

CODY GABRIEL,

      Plaintiff,

v.

JW MARRIOTT MIAMI TURNBERRY
RESORT & SPA,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on *Pro Se* Plaintiff Cody Gabriel's ("Plaintiff") Motion

to Proceed *In Forma Pauperis* (the "IFP Motion"), ECF No. [3].  Because Plaintiff has not paid

the Court's filing fee, the screening provisions of 28 U.S.C. § 1915(e) apply.[1]  Under that statute,

a court must dismiss the case if the court "at any time . . . determines that . . . the action or appeal

. . . is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

After reviewing the pleadings, record, and relevant law, I recommend that the IFP Motion, **ECF**

---

[1] Though the plain language of the statute appears to make its provision applicable only to prisoners, "[t]he screening process under 28 U.S.C. § 1915 applies to non-prisoner pro se litigants who are proceeding in forma pauperis."  *Fletcher v. President of Albert Einstein Med. Ctr.*, No. 15-24355-CIV, 2016 WL 11547296, at *1 (S.D. Fla. Feb. 10, 2016), *R. & R. approved*, No. 15-24355-CIV, 2016 WL 11547297 (S.D. Fla. Apr. 5, 2016); *see also Neitzke v. Williams*, 490 U.S. 319, 329 (1989) (noting "Congress' over-arching goal in enacting the *in forma pauperis* statute" was "to assure equality of consideration for all litigants" (quotation marks omitted)); *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (finding no error in the district court's dismissal of a non-prisoner's complaint under § 1915(e)(2)(B)(ii)); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("Reasonable access to the courts is provided to indigent claimants by the *in forma pauperis* (IFP) statute, 28 U.S.C. sec. 1915 *et seq.*, which allows commencement of suits without payment of fees and court costs by a person who makes an affidavit that he is unable to pay the costs.").

No. **[3]** be **GRANTED**; and that the Complaint, **ECF No. [8]**, be **DISMISSED WITHOUT PREJUDICE** pursuant § 1915(e)(2)(B)(ii).  In addition, upon the undersigned's review of Plaintiff's prolific history of *pro se* filings, many of which have been dismissed for various reasons, the undersigned also recommends that Plaintiff be deemed a vexatious filer and that the District Court issue a limited injunction on future filings as further explained below.

## I.   FACTUAL BACKGROUND

Plaintiff filed a six-count Complaint against Defendant JW Marriott Miami Turnberry Resort & Spa ("Defendant"), alleging claims for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2) (Count I), violation of the FCRA, 15 U.S.C. § 1681b(b)(3) (Count II), retaliation under the FCRA (Count III), violation of Florida's credit-report restrictions, Fla. Stat. § 443.1085 (Count IV), invasion of privacy (intrusion upon seclusion) (Count V), and intentional infliction of emotional distress (Count VI).  *See generally* ECF No. [1].  In the Complaint, he alleges that in October 2023, he was invited to a group panel interview for a food-and-beverage position with Defendant and that, before the interview, Defendant "procured a consumer report about Plaintiff for employment purposes."  *See* ECF No. [1] at 3.  Although "federal law requires employers to provide applicants with a clear, stand-alone disclosure that a background check may be obtained and to obtain the applicant's written permission," "Defendant failed to provide this disclosure and never obtained Plaintiff's written consent."  *See* ECF No. [1] at 3.  The Complaint further alleges that after Defendant obtained the consumer report, it denied Plaintiff an employment opportunity and, in doing so, failed to "first provide a pre-adverse action notice . . . and allow the applicant time to dispute or explain any inaccuracies" as the FCRA requires.  *See* ECF No. [1] at 4.  About 16 months later, on February 26, 2025, Plaintiff sent Defendant a written request for a copy of the consumer report it used to make the hiring decision,

at which point, Defendant's in-house counsel "falsely claim[ed] that Defendant never possessed a consumer report on Plaintiff." *See* ECF No. [1] at 4.

Based on these allegations, Plaintiff's Complaint asserts the claims described above and demands $2,050,000 in damages, consisting of $48,000 in lost wages and benefits; $500,000 for severe emotional distress, mental anguish, and reputational harm; $1,500,000 for punitive damages; and $2,000 for willful statutory damages under the FCRA. *See* ECF No. [1] at 8. Plaintiff attaches several documents to the Complaint, including the letter from Defendant's in-house counsel, stating it "has never had[] any consumer reports or background checks pertaining to" Plaintiff, along with Plaintiff's letter to Defendant requesting the consumer report, and what appears to be a settlement demand with a proposed settlement agreement. *See* ECF No. [1] at 10-27.

## II.   LEGAL STANDARD

### a.   IFP Motions

"[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915. The Eleventh Circuit has "observed that a trial court has wide discretion in denying an application to proceed IFP under 28 U.S.C. § 1915. This is especially true, the rubric goes, in civil cases for damages, wherein the courts should grant the privilege sparingly." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 (11th Cir. 2004) (citation omitted). "When considering a motion filed pursuant to § 1915(a), the only determination

to be made by the court is whether the statements in the affidavit satisfy the requirement of poverty." *Id.* at 1307 (alterations adopted, quotation marks and footnote omitted). "An affidavit addressing the statutory language should be accepted by the court, absent a serious misrepresentation, and need not show that the litigant is 'absolutely destitute' to qualify for indigent status under § 1915." *Id.* (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 338–40 (1948)).

"Such an affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.* (footnote omitted). "In other words, the statute is not to be construed such that potential litigants are forced to become public charges or abandon their claims because of the filing fee requirements." *Id.* "Where the IFP affidavit is sufficient on its face to demonstrate economic eligibility, the court should first docket the case and then proceed to the question of whether the asserted claim is frivolous." *Id.* (alterations adopted).

### b. Pleading Requirements

Section 1915(e)(2) requires the Court to dismiss Plaintiff's case if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Failure to state a claim includes failure to comply with the Federal Rules of Civil Procedure. *See Moon*, 863 F.2d at 837. Every complaint, whether filed by a *pro se* party or an attorney, must comply with the Federal Rules of Civil Procedure. *See id.* That means Plaintiff's Complaint must conform with Rule 8, which requires him to give a short and plain statement of his claims showing he is entitled to relief, *see* Fed. R. Civ. P. 8(a), and with Rule 10, which requires him to state those claims in a series of numbered paragraphs and to limit each paragraph to a single set of circumstances, *see* Fed. R. Civ. P. 10(b).

To state a claim for relief, a pleading "must contain" three substantive parts: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." *See* Fed. R. Civ. P. 8(a). Those substance requirements are aimed at ensuring that a complaint contains "sufficient factual matter, accepted as true," *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to both "state a claim to relief that is plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (alteration adopted, quotation marks omitted).

"[D]istrict courts have the power and the duty to define the issues at the earliest stages of litigation," which includes the responsibility of dismissing or requiring a party to correct shotgun pleadings. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). There are four types of shotgun pleadings that violate Rule 8(a), Rule 10(b), or both:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnote call numbers omitted). The "unifying characteristic" of shotgun pleadings is they "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323 (footnote call number omitted). The Eleventh Circuit has "condemned shotgun pleadings time and again" because they "exact an intolerable toll on the trial court's docket, lead

to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (citation omitted); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

Given the havoc they wreak, the Eleventh Circuit has specifically instructed district courts not to tolerate shotgun pleadings because "[t]olerating such behavior constitutes toleration of obstruction of justice." *Jackson*, 898 F.3d at 1357 (footnote omitted); *see also Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[S]hotgun complaints . . . are altogether unacceptable."). It has made clear that a district court that receives a shotgun pleading, at minimum, "must intervene *sua sponte* and order a repleader." *See Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds by*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). And if the claims of a complaint "are so poorly pleaded that" it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *see Weiland*, 792 F.3d at 1325 (emphasis and quotation marks omitted), a district court "retains authority to dismiss a shotgun pleading on that basis alone," *see Jackson*, 898 F.3d at 1357. With that said, courts must still be mindful to "construe *pro se* pleadings liberally, holding them to a less stringent standard than those drafted by attorneys." *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (citation omitted).

### c. Vexatious Filers

A district court has the inherent authority "to protect itself against abuses by *pro se*

litigants." *See Thomas v. Christina*, No. 22-CV-20498, 2022 WL 1100851, at *3 (S.D. Fla. Apr. 13, 2022) (citing *Procup v. Strickland*, 792 F.2d 1069, 1073-74 (11th Cir. 1986)); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 n.15 (11th Cir. 2002)). "Indeed, [t]he court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." *Id.* "The right of access to the courts 'is neither absolute nor unconditional." *Miller v. Donald*, 541 F. 3d 1091, 1096 (11th Cir. 2008) (quoting *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 516 (11th Cir. 1991)). "A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings in order to harass someone to the point of distraction or capitulation." *Riccard*, 307 F.3d at 1298 (citing *Filipas v. Lemons*, 835 F.3d 1145, 1146 (6th Cir. 1987)).

A court may, therefore, fashion a limited injunction against a vexatious litigant, but in doing so, it may not "completely foreclose a litigant from any access to the courts." *Id.* (collecting cases). However, "[t]he traditional standards applicable to issuance of an injunction do not apply to the issuance of an injunction against a vexatious litigant." *Lustig v. Stone*, No. 15-CV-20150, 2020 WL 3469719, at *10 (S.D. Fla. June 25, 2020) (citing *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100-01 (11th Cir. 2004)). Rather, "[a] history of litigation entailing 'vexation, harassment and needless burden on the courts and their supporting personnel' is enough" for the entry of a limited injunction. *Id.* (quoting *Ray v. Lowder*, No. 02-CV-316-OC-10GRJ, 2003 WL 22384806, at *2 (M.D. Fla. Aug. 29, 2003)). And when entering such an injunction, courts have routinely "restrict[ed] a vexatious litigant from filing anything without prior approval from the Court." *Lustig*, 2020 WL 3469719 at *22. This particular sanction "has been previously imposed on vexatious litigants in this district." *Thomas*, 2022 WL 1100851 at *3 (citing *SEC v. Imperato*, No. 12-CV-80021-RNS, 2020 WL 5264515, at *1 (S.D. Fla. June 30, 2020); *Ruha v. City of Palm*

*Beach Gardens et al.*, No. 19-CV-80681, ECF No. [93] (S.D. Fla. July 1, 2020), *Aiken v. Crews, et al.*, No. 14-CV-62487, ECF No. [6] (S.D. Fla. Feb. 20, 2015)).

## III.   DISCUSSION

### a.  The IFP Motion, ECF No. [3]

The Court may grant Plaintiff's IFP Motion if the statements in his affidavit satisfy the requirement of poverty.  *Martinez*, 364 F.3d at 1307. While the affidavit need not show that Plaintiff is absolutely destitute to qualify for indigent status under § 1915, it must, at a minimum, show that, because of his poverty, he is unable to pay for the court fees and costs and to support and provide necessities for himself and his dependents. *Id.* Plaintiff's affidavit does so here.

The Court starts its analysis by looking at the Department of Health and Human Services ("HHS") poverty guidelines as these are central to an assessment of an applicant's poverty.  *See Taylor v. Supreme Court of New Jersey*, 261 F. App'x 399, 401 (3d Cir. 2008) (using HHS Guidelines as the basis for section 1915 determination); *Lewis v. Ctr. Mkt.*, 378 F. App'x 780, 784 (10th Cir. 2010) (affirming use of HHS guidelines); *see also* Annual Update of the HHS Poverty Guidelines, 90 Fed. Reg. 5917 (Jan. 17, 2025).  Further, the section 1915 analysis requires "comparing the applicant's assets and liabilities in order to determine whether he has satisfied the poverty requirement."  *See Thomas v. Chattahoochee Judicial Circuit*, 574 F. App'x 916, 917 (11th Cir. 2014).

In the IFP motion, Plaintiff avers that he has no dependents, *see* ECF No. [3] at 3; thus, the Court must consider the poverty table as it relates to a one-person household.  According to the 2025 HHS poverty table, a one-person household meets the poverty threshold with an annual income of $15,650 or less.  *See* 90 Fed. Reg. 5917.  Here, Plaintiff attached an Affidavit to his IFP Motion that provides more specific information as to his current monthly income.  *See* ECF No.

[3] at 6.  In the Affidavit, he explains that he is currently homeless and resides in a shelter, he earns anywhere from $181.60 to $544.80 per month from "day labor through Pacesetter Personnel Service," and he receives $203 in SNAP food assistance.  *See* ECF No. [3] at 6.  Regarding his assets, he indicated his bank account was closed with a negative balance and that he has no savings, investments, or other property.  Given the supplemental information provided in the Affidavit, Plaintiff qualifies for indigent status in this civil action.

### b.  The Screening under 28 U.S.C. § 1915

Because Plaintiff is eligible for IFP status, the Court must next screen the Complaint as required by 28 U.S.C. § 1915(e).  Upon review of the allegations, the Complaint falls under the first category of shotgun pleadings, that is, "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland*, 792 F.3d at 1321.  Indeed, a review of the Complaint reveals the following pattern: (1) in Count I, Plaintiff realleged paragraphs 1 through 16; (2) in Count II, Plaintiff realleged paragraphs 1 through 19 (which includes the allegations from Count I); (3) in Count III, Plaintiff realleged paragraphs 1 through 23 (which includes the allegations from Counts I and II); (4) in Count IV, Plaintiff realleged paragraphs 1 through 29 (which includes the allegations from Counts I-III); (5) in Count V, Plaintiff realleged paragraphs 1 through 34 (which includes the allegations from Counts I-IV); and finally, in Count VI, Plaintiff realleged paragraphs 1 through 37 (which includes the allegations from Counts I-V).  *See* ECF No. [1].  As a result, the Complaint is the quintessential shotgun pleading.

Although the Court must read Plaintiff's *pro se* Complaint liberally, *see Hughes*, 350 F.3d at 1160, the Court is not required to serve as Plaintiff's "lawyer in rewriting" it, *see Jackson*, 898

F.3d at 1357.  Indeed, the Eleventh Circuit has made abundantly clear district courts must not tolerate shotgun pleadings and instead must require *the plaintiff* to correct the pleading's deficiencies, such as by dismissing it without prejudice, *see id.*, or by "order[ing] a repleader," *see Byrne*, 261 F.3d at 1133.  These actions both fulfill the district court's "duty to define the issues at the earliest stages of litigation," *see Johnson Enters.*, 162 F.3d at 1290, and ensure discovery is controlled and the docket is manageable, *see Anderson*, 77 F.3d at 367. For these reasons, the Complaint is subject to dismissal.

### c.  Plaintiff's History as a Vexatious Filer

In the last 18 months, Plaintiff has become a prolific filer in the Southern District of Florida. By the undersigned's count, Plaintiff has filed 17 cases to date, many of which have been dismissed, while others remain pending.  But most of these cases tend to have a common theme — Plaintiff has sued an entity with which he previously sought and was denied employment.  Many of them, like this one, allege violations of the FCRA when the defendant allegedly obtained a copy of Plaintiff's consumer report and used that report to deny him employment.

Starting on May 17, 2024, Plaintiff filed a lawsuit against Seminole Hard Rock Hotel & Casino Hollywood ("the Hard Rock Hotel"), Seminole Tribe of Florida, and seven individuals (who appear to work for the Hard Rock Hotel), asserting claims under Title VII of the Civil Rights Act of 1964 for failing to hire him.  *See* Case No. 24-CV-21923-RUIZ, ECF No. [6].  On May 22, 2024, the Honorable Rodolfo A. Ruiz dismissed the Complaint without prejudice and closed the case, finding that amendment would be futile "both because he does not allege discrimination on a protected ground and has failed to exhaust his administrative remedies."  *See* Case No. 24-CV-21923-RUIZ, ECF No. [11] at 5-6.  Despite this Order, Plaintiff persisted in filing a motion to amend complaint, a notice with "supporting paperwork for the civil case," and a motion for default

judgment, which ultimately prompted the entry of an order striking these filings and disallowing any other filings in the case. *See* Case No. 24-CV-21923-RUIZ, ECF Nos. [12], [14], [15], and [16].

Two months later, Plaintiff filed a new lawsuit against 23 defendants, again against the Hard Rock Hotel and the Seminole Tribe of Florida, but this time also against the National Gaming Commission, Hard Rock Hotel International, Faena Hotel Miami Beach, Marquis Management, SLS LUX Brickell Hotel, SLS Miami Beach, 1 Hotel South Beach, JW Marriott Miami Turnberry Resort and Spa Hotel (which is the Defendant in this case), Turnberry Ocean Colony, Grand Beach Hotel, The Bath Club, The Elser Residences Miami, Akam Property Management, Mondrian South Beach, Attitude Management Group LLC, LIV Unltd., Edgewater Miami Condos, Moxy Miami South Beach, Hilton Bentley Miami-South Beach Hotel, Kenilworth Association, the Miami Beach Edition Hotel, and City of Miami Beach. *See* Case No. 24-CV-22832-ALTMAN, ECF Nos. [1], [9]. In a 65-page complaint, Plaintiff detailed his inability to obtain employment with each of the named defendants, including claims relating to this Defendant's failure to hire him despite going through the interview process. *See* Case No. 24-CV-22832-ALTMAN, ECF Nos. [9]. Plaintiff's complaint purported to state claims for a hostile work environment and violations of the Fair Chance Act. *See* Case No. 24-CV-22832-ALTMAN, ECF No. [9]. Ultimately, the Honorable Roy K. Altman dismissed the amended complaint and denied any further amendment as futile. *See* Case No. 24-CV-22832-ALTMAN, ECF No. [13] at 6. In his order, Judge Altman noted that "Plaintiff, in short, has required two different judges of our Court to expend considerable time and resources dissecting and dismissing his frivolous complaints," warning him that if he "continue[s] this pattern of vexatious filing, we will direct the Clerk of Court to refuse any further complaints from h[im] unless accompanied by payment of a filing fee,

a sworn oath indicating imminent danger of serious personal injury, or representation by an attorney admitted to the bar of this court." *See* Case No. 24-CV-22832-ALTMAN, ECF No. [13] at 7 (quoting *Anglin v. Northpark at Scott Carver Apartments*, No. 24-CV-21098, 2024 WL 1229069, at *3 (S.D. Fla. Mar. 22, 2024)).

And yet the filings continued. Undeterred, on September 16, 2024, Plaintiff again sued SLS LUX Brickell Hotel & Residences for employment discrimination for their failure to hire him. *See* Case No. 24-CV-23572-ALTMAN, ECF Nos. [1], [13], [14], [16], [17]. After Judge Altman dismissed that complaint, giving Plaintiff specific instructions on how to amend his claims, ECF No. [29], Plaintiff filed an amended complaint, ECF No. [30], purporting to state claims under the FCRA and the Americans with Disabilities Act ("ADA"), and breach of an implied agreement, which Judge Altman again dismissed with leave to amend, ECF No. [42]. Eventually, Judge Altman granted Plaintiff's IFP application following the filing of the second amended complaint but dismissed his claim for invasion of privacy. *See* Case No. 24-CV-23572-ALTMAN, ECF No. [55]. Since then Plaintiff has appealed that ruling and the Eleventh Circuit Court of Appeals dismissed it for want of prosecution. *See* Case No. 24-CV-23572-ALTMAN, ECF Nos. [59], [73].

During the pendency of this latter case, on November 4, 2024, Plaintiff filed his third lawsuit against the Hard Rock Hotel and the Seminole Tribe of Florida. *See* Case No. 24-CV-62091-WILLIAMS, ECF No. [1]. In his third attempt at suing these two defendants, Plaintiff pursued claims under 44 U.S.C. §§ 760.01-760.11 relating to their failure to hire him, failure to accommodate his disability, retaliation, and providing unequal terms and conditions of employment, claiming they discriminated against him for "Harassment Sexual Orientation" and "Mental heath [sic] Medical History. Bipolar disorder." *See* Case No. 24-CV-62091-WILLIAMS,

ECF No. [1].  Three days later, the Honorable Kathleen M. Williams dismissed the Complaint for failure to state a claim.  *See* Case No. 24-CV-62091-WILLIAMS, ECF No. [10].

In 2025, Plaintiff has filed *13* more lawsuits in the Southern District of Florida, four of which have been dismissed.  Starting on February 7, 2025, Plaintiff sued the Hard Rock Hotel and the Seminole Tribe of Florida a *fourth* time related to their failure to hire him, purporting to state claims for retaliation, breach of contract, harassment, discrimination, negligence, and violations of the FCRA.  *See* Case No. 25-CV-20576-BLOOM, ECF No. [1].  The Honorable Beth Bloom thereafter dismissed the Complaint on sovereign immunity grounds.  *See* Case No. 25-CV-20576-BLOOM, ECF No. [9].  On July 14, 2025, Plaintiff filed another employment action — this time against the Biltmore Hotel Limited — asserting claims under the FCRA, the Miami-Dade Fair Chance Ordinance, Florida Statute § 768.26, and invasion of privacy (intrusion upon seclusion) for their decision to not hire him.  *See* Case No. 25-CV-23162-REID, ECF No. [1].  Dismissing this complaint for failure to state a claim, the Honorable Lisette M. Reid warned Plaintiff that he was a potential vexatious litigant and could become a restricted filer given his extensive filing history in the Southern District of Florida.  *See* Case No. 25-CV-23162-REID, ECF No. [9] at 11-12.

Neither Judge Altman nor Judge Reid's cautionary warnings discouraged Plaintiff from his continued vexatious filings in this District.  Indeed, Plaintiff filed *nine* more cases in 2025, which remain pending. Specifically, he filed two lawsuits on July 2, 2025, alleging employment-related claims in Case Nos. 25-CV-22985-LOUIS and 25-CV-22984-BECERRA.  In the latter case, he once again sued Grand Beach Hotel (previously sued in Case No. 24-CV-22832-ALTMAN) for claims under the FCRA and the Miami-Dade County Fair Chance Ordinance.  On July 14, 2025, he filed two more lawsuits: (1) Case No. 25-CV-23156-LOUIS in which he sued the Four Seasons

Hotel Miami for the same types of claims alleged in this case, and (2) Case No. 25-CV-23159-LETT in which he sued the Mondrian Hotel (also previously sued in Case No. 24-CV-22832-ALTMAN) for violations of the FCRA, the Miami-Dade Fair Chance Ordinance, and "federal tort claim for mental health injury."  One day later, he sued Preferred Parking SVCS for violations of the FCRA, intentional infliction of emotional distress, invasion of privacy, and negligence.  *See* Case No. 25-CV-23172-MARTINEZ, ECF No. [1].  Later that month, Plaintiff filed suit against Soho Beach House Hotel and Boucher Brothers Management, Inc. for violations of the FCRA. *See* Case No. 25-CV-23416-WILLIAMS, ECF No. [1].  And earlier this week, Plaintiff filed three more lawsuits: (1) this lawsuit; (2) Case No. 25-CV-24624-SHAW-WILDER against Kimpton Hotel & Restaurant Group, LLC; and (3) Case No. 25-CV-24625-D'Angelo against 1 Hotel South Beach (also previously sued in Case No. 24-CV-22832-ALTMAN) for claims related to their failure to hire him, including claims under the FCRA.

In addition to his multitude of employment-related claims, in 2025, Plaintiff filed a lawsuit against the City of Miami Beach Police Department for claims under 42 U.S.C. § 1983 and the ADA, which the Honorable David S. Leibowitz dismissed for failure to pay the required filing fee. *See* Case No. 25-CV-22413-LEIBOWITZ, ECF Nos. [1], [23].  Similarly, Plaintiff sued Pinnacle Condominium Association, Inc. for violations of the FCRA and the Honorable Cecilia M. Altonaga dismissed the Complaint after Plaintiff was repeatedly ordered to pay the required filing fee but refused to do so.  *See* Case No. 25-CV-23160-ALTONAGA, ECF Nos. [1], [6], [8], [13], [17], and [18].

With this extensive filing history, the undersigned does not hesitate to conclude that Plaintiff is a vexatious filer.  He has twice been warned that his pattern of filings is vexatious and may subject him to a restricted filer status, but he did not get the message.  Instead, he has persisted

14

in filing the same types of claims, many of which have been dismissed and many of which are against the same entities that were previously dismissed, such as the Hard Rock Hotel, the Seminole Tribe of Florida, the Mondrian Hotel, the Grand Beach Hotel, and 1 Hotel South Beach.

This Court has a responsibility "to protect itself against abuses by *pro se* litigants" and "to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." *Thomas*, 2022 WL 1100851, at *3 (citations omitted). Plaintiff does not have an unconditional or absolute right of access to the courts, *Miller*, 541 F. 3d at 1096, and he "does not have a First Amendment right to abuse official processes with baseless filings," *Riccard*, 307 F.3d at 1298. Because Plaintiff has abused the process, the undersigned recommends that he be deemed a vexatious filer and that a limited injunction be entered against him as set forth below.

## IV. CONCLUSION

For the above reasons, I respectfully **RECOMMEND** that**:**

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis*, **ECF No. [3]**, be **GRANTED**.

2. Plaintiff's *pro se* Complaint, **ECF No. [1]**, be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3. The District Court designate Plaintiff a vexatious litigant and issue a limited injunction restricting Plaintiff from filing any further motion, pleading, or other paper in this action, or from filing another lawsuit without prior approval from the Court or unless such filings are signed by an attorney authorized to practice law before this Court.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the assigned United States District Judge. Failure to timely file objections

CASE NO. 25-CV-24627-ELFENBEIN

shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except on grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on October 8, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:

Cody Gabriel
1545 NW 7th Avenue
Miami, FL 33136
305-527-7543
Email: codyjimmygabriel0220@outlook.com
PRO SE

16